IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 10, 2002

## STATE OF TENNESSEE v. KELVIN HOOKS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-13866     Chris Craft, Judge**

---

**No. W2001-01516-CCA-R3-CD  - November 1, 2002**

---

A Shelby County jury convicted the defendant, Kelvin Hooks, of second degree murder and felony murder. The trial court merged the two convictions and sentenced the defendant to life on the felony murder conviction. In this appeal as of right, the defendant raises the following issues: (1) whether the evidence was sufficient to support the convictions for second degree murder and felony murder; (2) whether the state improperly questioned the defendant regarding his alibi after he withdrew a Notice of Alibi; and (3) whether the trial court erred in refusing to instruct the jury on self-defense. After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Marty B. McAfee, Memphis, Tennessee, for the appellant, Kelvin Hooks.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen C. Baity and Katrina Earley, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

John Mason, the 71-year-old victim, operated a pawn shop in a house where he lived with his grandson, Delmar Jones. James Patterson, a family friend, regularly brought customers to Mason's house. During the early hours of August 24, 1998, Patterson brought the defendant to Mason's house where the defendant attempted to cash a check. Mason refused to cash the check, and Patterson and the defendant left.

Patterson testified that approximately thirty minutes later, he, the defendant, and Darrell Jennings returned to Mason's house in a 1984 Buick Oldsmobile, which they had borrowed from

Gerald Jerry. The defendant and Jennings had clothing that they wanted to sell. Both Jones and Patterson identified the defendant as a co-perpetrator and testified that when Jones asked Jennings how much money he wanted for the clothes, the defendant and Jennings each produced a gun.

While holding a nine millimeter revolver, the defendant told Mason and Jones to give him their money. Mason stated he did not have any money. Mason then approached Jennings and took his gun without a struggle. Patterson testified that Mason then shot Jennings, and the defendant shot Mason three or four times. The three men fled, leaving the Buick parked near Mason's house. Jones testified that when he heard shots, he ran into the kitchen. Jones did not see who was shooting, but he saw Mason fall on the floor. Mason died as a result of the gunshot wounds.

The police officers apprehended Patterson at the scene of the shooting, and Patterson gave a statement implicating Jennings and the defendant. The police also found the defendant's fingerprints on the Buick. Officers found two .38 casings, one .25 caliber casing, and four nine millimeter casings at the scene of the shooting. Officers also found over $5,000 in cash in Mason's pockets. After the shooting, the defendant fled to Colorado and later to North Dakota, where he was arrested.

The defendant testified at trial and denied killing Mason. He further testified that he was not present during the shooting. On cross-examination, when asked where he was on that date, the defendant stated that he was likely at a house on Trigg Street selling drugs from 11:00 a.m. until midnight. The defendant further testified that after midnight he likely went to either his father's house at 316 Cambridge Street or his mother's house on Knight Arnold Road.

The defendant was indicted for first degree murder in perpetration of a robbery and premeditated first degree murder. The jury found the defendant guilty of murder in the perpetration of a robbery and second degree murder, the latter being a lesser-included offense of premeditated first degree murder. The trial court merged the second degree murder conviction into the felony murder conviction and sentenced the defendant to life in the Department of Correction. This appeal followed.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to support the second degree murder conviction and the felony murder conviction. We disagree.

This court gives considerable weight to the verdict of a jury in a criminal trial because the jury, as the trier of fact, resolves all questions concerning the credibility of witnesses and the weight and value of the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, the state, as the prevailing party in the trial court, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a jury conviction removes the presumption of the

defendant's innocence and replaces it with a presumption of guilt, thus placing the burden on the defendant to demonstrate why the evidence does not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To this end, the defendant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see* Tenn. R. App. P. 13(e).

## A.  Second Degree Murder

Although the second degree murder conviction was merged into the felony murder conviction, we, nevertheless, address sufficiency relating to second degree murder. Second degree murder is defined as an unlawful, "knowing killing of another. . . ." Tenn. Code Ann. §§ 39-13-201, -210(a)(1). A person acts "knowingly" with respect to second degree murder when "the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b); *see* State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

In the present action, the defendant contends that the evidence was insufficient to support a finding that the defendant's actions were "knowing." However, viewing the evidence in the light most favorable to the state, we conclude otherwise.

Delmar Jones testified that shortly after entering Mason's home, the defendant produced a gun and demanded all their money. Mason then took Jennings' gun away from him. Patterson testified that after the victim shot Jennings with his own gun, the defendant shot Mason three or four times. The evidence was sufficient to establish that the defendant knowingly killed Mason. The defendant's argument is without merit.

## B.  Murder in Perpetration of Robbery

Felony murder includes "[a] killing of another committed in the perpetration of or attempt to perpetrate any. . . robbery. . . ." Tenn. Code Ann. § 39-13-202(a)(2). "Robbery" is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

The defendant maintains that the evidence was insufficient to support a conviction for felony murder because there is no evidence that the defendant, Jennings, or Patterson actually took anything from Mason or Jones. In support of his argument, the defendant cites to the fact that the police officers found over $5,000 in the victim's pockets.

The felony murder statute does not require the robbery actually be completed, but includes the *attempt* to perpetrate the robbery. *See* Tenn. Code Ann. § 39-13-202(a)(2). This requirement was satisfied by proof that the defendant, while holding a gun, demanded Mason and Jones give him all their money. The evidence was sufficient to support a conviction for murder in the perpetration of a robbery.

## II.  WITHDRAWN NOTICE OF ALIBI

The defendant contends that the prosecution improperly questioned him regarding information contained in the notice of alibi, which he withdrew.  We disagree.

The propriety, scope, manner and control of the examination of witnesses is within the sound discretion of the trial court.  State v. Humphreys, 70 S.W.3d 752, 766-67 (Tenn. Crim. App. 2001).  Absent an abuse of discretion, we will not interfere with such rulings.  State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992).

Upon a written demand by the district attorney general, the defendant is required to serve a notice of an intention to offer an alibi defense.  Tenn. R. Crim. P. 12.1(a).  If the defendant subsequently withdraws the notice of an alibi defense, evidence of the notice or statements relating to the notice are inadmissible in any proceeding against the defendant.  *Id.* at (f).

In the Notice of Alibi, the defendant maintained he was at 316 Cambridge Street with Gary Hilliard when the shooting occurred.  The defendant subsequently withdrew the Notice of Alibi.  This address was first mentioned by the defendant during cross-examination when the prosecution asked him where he was living on the day the shooting occurred.  The prosecution then asked the defendant where he was on the day of the shooting.  In view of the defendant's testimony that he was not present at the time of the crime, this question is clearly relevant.  The defendant testified that he was probably at a house on Trigg Street until midnight, and then he probably went to his father's house on Cambridge or his mother's house on Knight Arnold to sleep.

During the trial, the prosecution made no reference to Gary Hilliard or the defendant's withdrawn notice of alibi.  Information regarding Cambridge Street was first mentioned by the defendant as one of his places of residence.  Therefore, we conclude the prosecution's questions were proper.


## III.  SELF-DEFENSE

Finally, the defendant contends that the trial court erred in refusing to charge the jury on self-defense.  We disagree.

The trial judge has a duty to give a complete charge of the law applicable to the particular facts of the case, including every issue of fact material to the defense if raised by the evidence.  State v. Sims, 45 S.W.3d 1, 9 (Tenn. 2001); *see* State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975).  In deciding whether a defense instruction is warranted, "the court must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense."  Sims, 45 S.W.3d at 9.  This court can find error only if, when read as a whole, the charge fails to fairly submit the legal issues or misleads the jury as to the applicable law.  State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

Under the doctrine of self-defense, one is justified in using force against another "when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of *unlawful* force. . . ." Tenn. Code Ann. § 39-11-611(a) (emphasis added). In order for self-defense to be charged to the jury, it must be raised by the proof. Tenn. Code Ann. § 39-11-203(c).

Self-defense is not an available defense "if the person provoked the other individual's use or attempted use of unlawful force, unless:
    (1) The person abandons the encounter or clearly communicates to the other the intent to do so; and
    (2) The other nevertheless continues or attempts to use unlawful force against the person."
Tenn. Code Ann. § 39-11-611(d); *see* <u>Sims</u>, 45 S.W.3d at 9. Therefore, self-defense is not an available defense where the defendant provokes the initial use of force. <u>State v. Inlow</u>, 52 S.W.3d 101, 109 (Tenn. Crim. App. 2000). Furthermore, the other person's use of force must be "unlawful." Tenn. Code Ann. § 39-11-611(a).

In the present case, self-defense was not fairly raised by the proof at trial. The prosecution's theory of the case was that the defendant shot and killed Mason in the course of a robbery. The defendant's theory was that he did not shoot the victim because he was not present. Under the first aggressor rule, self-defense is not available to a defendant who initiates the force. *See* Tenn. Code Ann. § 39-11-611(d). The defendant was clearly the initial aggressor when he produced a gun and demanded money. Before the victim shot Jennings, the defendant did not abandon the robbery, nor did he communicate any intent to abandon the robbery. Furthermore, when the victim shot Jennings, the victim was not exercising "unlawful" force; he was being robbed at gunpoint. Therefore, we conclude that a jury charge on self-defense was not warranted.

## CONCLUSION

In summary, we hold that the evidence was sufficient to support a conviction for second degree murder and murder in perpetration of a robbery. The prosecution did not improperly question the defendant regarding his alibi. Finally, the trial court did not err in refusing to charge the jury on self-defense. The judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE