# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
Heard in Memphis
November 9, 2004 Session

## STATE OF TENNESSEE v. DETRICK COLE

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 01-01221    Joseph B. Dailey, Judge**

---

**No. W2002-01254-SC-DDT-DD - Filed January 20, 2005**

---

ADOLPHO A. BIRCH, JR., J., concurring and dissenting.

I concur in the conclusion of the majority that Cole's conviction should be affirmed. As to the sentence of death, however, I have two concerns. First, I am uncomfortable with the majority's analysis regarding the application of aggravating circumstance (i)(2) (previous conviction of one or more felonies whose statutory elements involve the use of violence to the person). The majority acknowledges that the statutory elements of the previous convictions relied on in this case: robbery, kidnapping, reckless endangerment and attempted rape, *may or may not* involve the use of violence. Therefore, the underlying facts of those prior offenses must be analyzed to determine whether violence was involved. Citing to State v. Sims, 45 S.W.3d 1 (Tenn. 2001), and the more recent case applying Sims, State v. Powers, 101 S.W.3d 383, 400-401 (Tenn. 2003), the majority holds that a judge may singly make the determination whether violence was involved in the prior cases and instruct the jury accordingly. In so holding, the majority characterizes this decision as a "legal," not "factual" one.

Both Sims and Powers, of course, preceded the landmark case of Blakely v. Washington, 542 U.S. ___, ___, 124 S.Ct. 2531, 2536 (2004), in which the Supreme Court clarified unequivocally that *the jury*, not the judge, must find any facts that will be used to increase the penalty for a crime beyond the prescribed statutory maximum. (The Court had previously held in Ring v. Arizona, 536 U.S. 584, 609 (2002), that Apprendi applied to require that a jury find aggravating factors that will be used to justify a death sentence). By characterizing the decision whether a prior offense involved violence as a "legal" as opposed to "factual" one, the majority effectively avoids the consequences of the Apprendi and Blakely holdings. I believe that this conclusion is less certain than the majority implies, although the Supreme Court has yet to address this narrow issue. I would hold that in light of the Apprendi, Ring and Blakely holdings, *any* additional factual findings necessary for application of the prior violent felony aggravator "beyond the bare fact that a prior conviction exists," including

whether the elements of the prior conviction are "violent," must be made by a jury. Accord, Arizona v. Ring, 65 P.3d 915, 939 (Ariz. 2003) (on remand from the U.S. Supreme Court).

As for the second concern, I continue to adhere to my views, previously expressed in a long line of dissents, that the comparative proportionality review protocol currently embraced by the majority is inadequate to shield defendants from the arbitrary and disproportionate imposition of the death penalty. See Tenn. Code Ann. § 39-13-206(c)(1)(D) (1995 Supp.). I have repeatedly expressed my displeasure with the current protocol since the time of its adoption in State v. Bland, 958 S.W.2d 651 (Tenn. 1997). See State v. Robinson, 146 S.W.3d 469, 529 (Tenn. 2004) (Birch, J., concurring and dissenting); State v. Leach, 148 S.W.3d, 42, 68 (Tenn. 2004) (Birch, J., concurring and dissenting); State v. Davis, 141 S.W.3d 600, 632 (Tenn. 2004) (Birch, J., concurring and dissenting); State v. Berry, 141 S.W.3d 549, 589 (Tenn. 2004) (Birch, J., concurring and dissenting); State v. Holton, 126 S.W.3d 845, 872 (Tenn. 2004) (Birch, J., concurring and dissenting); State v. Davidson, 121 S.W.3d 600, 629-36 (Tenn. 2003) (Birch, J., dissenting); State v. Carter, 114 S.W.3d 895, 910-11 (Tenn. 2003) (Birch, J., dissenting); State v. Reid, 91 S.W.3d 247, 288-89 (Tenn. 2002) (Birch, J., concurring and dissenting); State v. Austin, 87 S.W.3d 447, 467-68 (Tenn. 2002) (Birch, J., dissenting); State v. Stevens, 78 S.W.3d 817, 852 (Tenn. 2002) (Birch, J., concurring and dissenting); State v. McKinney, 74 S.W.3d 291, 320-22 (Tenn. 2002) (Birch, J., concurring and dissenting); State v. Bane, 57 S.W.3d 411, 431-32 (Tenn. 2001) (Birch, J., concurring and dissenting); State v. Stout, 46 S.W.3d 689, 720 (Tenn. 2001) (Birch, J., concurring and dissenting); Terry v. State, 46 S.W.3d 147, 167 (Tenn. 2001) (Birch, J., dissenting); State v. Sims, 45 S.W.3d 1, 23-24 (Tenn. 2001) (Birch, J., concurring and dissenting); State v. Keen, 31 S.W.3d 196, 233-34 (Tenn. 2000) (Birch, J., dissenting). As previously discussed, I believe that the three basic problems with the current proportionality analysis are that: (1) the proportionality test is overbroad,[1] (2) the pool of cases used for comparison is inadequate,[2] and (3) review is too subjective.[3] I have previously discussed, in depth, my perception that these flaws undermine the reliability of the current proportionality protocol. See State v. Godsey, 60 S.W.3d at 793-800 (Birch, J., concurring and dissenting). I continue to adhere to my view that the current comparative proportionality protocol is woefully inadequate to protect defendants from the arbitrary or disproportionate imposition of the

---

[1] I have urged adopting a protocol in which each case would be compared to factually similar cases in which *either* a life sentence or capital punishment was imposed to determine whether the case is more consistent with "life" cases or "death" cases. See State v. McKinney, 74 S.W.3d at 321 (Birch, J., concurring and dissenting). The current protocol allows a finding proportionality if the case is similar to existing *death penalty* cases. In other words, a case is disproportionate only if the case under review "is plainly lacking in circumstances consistent with those in similar cases in which the *death penalty* has been imposed." Bland, 958 S.W.2d at 665 (emphasis added).

[2] In my view, excluding from comparison that group of cases in which the State did not seek the death penalty, or in which no capital sentencing hearing was held, frustrates any meaningful comparison for proportionality purposes. See Bland, 958 S.W.2d at 679 (Birch, J., dissenting). This case, in particular, is a prime example of the arbitrariness of this protocol.

[3] As I stated in my concurring/dissenting opinion in State v. Godsey, "[t]he scope of the analysis employed by the majority appears to be rather amorphous and undefined–expanding, contracting, and shifting as the analysis moves from case to case." 60 S.W.3d 759, 797 (Tenn. 2001) (Birch, J., concurring and dissenting).

death penalty.[4]  Accordingly, I respectfully dissent from that portion of the majority opinion affirming the imposition of the death penalty in this case.

 

 

ADOLPHO A. BIRCH, JR.

---

[4]I also note that in a recent study on the costs and the consequences of the death penalty conducted by the State Comptroller, one of the conclusions was that prosecutors across the state are inconsistent in their pursuit of the death penalty, a fact that also contributes to arbitrariness in the imposition of the death penalty.  See John G. Morgan, Comptroller of the Treasury, Tennessee's Death Penalty:  Costs and Consequences 13 (July 2004), *available at www.comptroller.state.tn.us/orea/reports.*