# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 9, 2002 Session

## STATE OF TENNESSEE v. KARDIUS WILKS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-08070     Chris Craft, Judge**

---

### No. W2001-02172-CCA-R3-CD - Filed April 26, 2002

---

The Appellant, Kardius Wilks, was convicted by a Shelby County jury of first degree murder and sentenced to life imprisonment. On appeal, Wilks contends that the evidence presented at trial was insufficient to support his first degree murder conviction because the State failed to prove that the murder was premeditated and intentionally committed. After review, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

William C. Gosnell, Memphis, Tennessee, for the Appellant, Kardius Wilks.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and James Lammey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On January 12, 2000, several residents of Watkins Manor Apartments in Frayser were barbequing outside their apartments when the Appellant and Nicholas Russell drove up and parked their vehicle. Witnesses watched as the Appellant and Russell approached the victim. The Appellant struck the victim, Alexander King, in the head with a pistol and exclaimed, "I told you

about ya'll V.L.'s selling drugs over here in this neighborhood."[1] After the Appellant struck the victim with the handgun, the victim began running. The Appellant chased the victim into a driveway. The Appellant leveled his pistol at the victim, fired one shot and missed. As the victim continued running, the Appellant fired a second shot from a distance of approximately fifteen feet and the victim fell to the ground. The fatal gunshot struck the victim in the back of the head. The Appellant and Russell returned to their vehicle and drove away. Officers were called to the scene around 8:45 p.m. and found no weapons on the victim.

In his statement to police, the Appellant described the events preceding the murder and the murder itself as follows:

> Me and Nicholas Russell was riding through Watkins Manor Apartments and we had saw Mr. King [the victim] and then at that time we went back to Nicholas house in the Watkins Manor Apartments. Nick had went upstairs and got the gun, he brought it back down and gave it to me. We went back around where we saw [the victim] at and I guess [the victim] didn't notice me cause we had an incident where he had took something from me. He took some money from me about a couple of months ago. This was our first confrontation since he took the money. Nick had got into it with [the victim] about something, but I don't know what it was about and Nick told [the victim] not to come back in the Watkins Manor. When [the victim] walked up he didn't see me but Nick was talking to him. Nick was like saying, "Give me some money, give me something out of your pocket", and then I hit [the victim] with my hand, [the victim] took off running. Then Nick and me chased him and then Nick said, "shoot at him", and then I shot two times to try and scared him and he was running. He took a couple of more steps and then he fell. After, I saw him fall, me and Nick jumped in the car and rode off . . . I got up at about 3:30 a.m. . . . and I stopped right there at the Wolf River and I got out, slung the pistol over the side. . . . I didn't try to kill him and I didn't try to rob him. I just was trying to show him that you don't do folks wrong and get away with it. I didn't mean to shoot him anywhere . . . I was just trying to scare him.

A witness at the scene, Aaron Taylor, also recalled briefly seeing the Appellant arrive at the apartment complex and leave prior to his return twenty minutes later. The Appellant did not testify at trial.

## ANALYSIS

### Sufficiency of the Evidence

The Appellant argues that the evidence introduced at trial was insufficient to support his conviction for the first degree murder of Alexander King. Specifically, he contends that the State failed to prove the requisite elements of first degree murder, *i.e.*, that the killing was premeditated

---

[1] Testimony established that the initials V.L. were in reference to a street gang, the Vice-Lords.

and intentionally committed. A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

First degree murder is defined as "a premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). The statute defines premeditation as follows:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-302(d); *State v. Sims*, 45 S.W.3d 1, 7-8 (Tenn. 2001). The element of premeditation is a question for the jury and may be established by proof of the circumstances surrounding the killing. *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). There are several factors which tend to support the existence of premeditation, including: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) declarations by the defendant of an intent to kill; (4) evidence of procurement of a weapon; (5) preparations before the killing for concealment of the crime; (6) and calmness immediately after the killing. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *Bland*, 958 S.W.2d at 660. As noted above, first degree murder also requires that the killing of another be intended. Intentional conduct "refers to a person who acts intentionally with respect . . . to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18). Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act, and from all the circumstances of the case in evidence. *State v. Elder*, No. 03C01-9702-CR-00053 (Tenn. Crim. App. at Knoxville, Apr. 23, 1998).

The proof established at trial that, shortly before the homicide occurred, the Appellant and Russell had driven to the apartment complex where they sighted the victim. According to the Appellant's own statement, animus existed between the Appellant and the victim. In the Appellant's confession to police, the Appellant related that the victim had previously stolen money from him. The victim and the Appellant belonged to rival gangs and the victim had been warned to stay away from Watkins Manor Apartments. After seeing the victim at the complex, the Appellant and Russell left and drove to Russell's apartment, where they obtained Russell's gun. They returned to the apartment complex approximately twenty minutes later. The Appellant got out of the car and approached the victim. There is no testimony to support the Appellant's contention that the murder arose out of a heated disagreement or as a result of a "passionate rage." To the contrary, the testimony of witnesses stated that the only loud part of what was a very brief conversation or encounter was the Appellant's statement to the victim, "I told you about ya'll [Vice-Lords] selling drugs over here in this neighborhood." Upon being struck in the head with a pistol, the unarmed victim began running and the Appellant chased after him.[2] After the Appellant fired twice, the victim fell to the ground and later died as a result of a gunshot wound to the back of the head. The Appellant and Russell then drove away.

With regard to the Appellant's argument that he had no intention to kill the victim, but merely wanted to "scare" him, we would observe that the jury is not obligated to accept the Appellant's statement as to his motive for the shooting. Again, this issue is a question of fact for the jury. Evidence introduced at trial on the issue of the Appellant's intent included witnesses who testified that they watched as the Appellant aimed his gun in the direction of the Appellant and fired twice. There was no evidence presented to indicate that the Appellant shot the gun in the air or away from his target. We find the proof introduced at trial sufficient to permit a rational jury to conclude that the killing of the victim was intended and occurred after the exercise of reflection and judgment and in the absence of excitement and passion.

## CONCLUSION

After reviewing the evidence in the light most favorable to the State, we find that a rational jury could have found beyond a reasonable doubt that the Appellant acted with premeditation and with the intent to kill the victim. Accordingly, the judgment of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE

---

[2]The Appellant argues that the victim "may" have been armed because the victim's brother was later arrested with a gun. However, witnesses to the shooting testified that the victim was never seen with a gun and that the victim never fired or displayed a gun during the encounter. Law enforcement officers also testified that no weapon was found on the victim's body. The victim's brother also denied that he took possession of a weapon from the victim's body before law enforcement officers arrived, asserting that the weapon he had was his own. Thus, the record simply does not support the Appellant's assertion that the victim "may" have been armed at the time of his death.